UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD LEE BENNETT,

                            Plaintiff,

v.                                           5:14-CV-0537

                                           (TJM/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                         OF COUNSEL:

OLINSKY LAW GROUP           HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN     MONIKA K. CRAWFORD
United States Attorney for the         Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter was referred to the undersigned for report and recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Court affirm the decision of the Administrative Law Judge.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently thirty-eight years old. (Administrative Transcript[1] ("T.") at 40.) Plaintiff is a high school graduate. (T. at 42.) Plaintiff has had a variety of jobs, including apartment maintenance, cleaning molds for two plastic companies, and assembly work. (T. at 45-49.) Plaintiff alleges disability due to learning disability, epilepsy, narcolepsy, and speech problems. (T. at 253.)

Plaintiff applied for disability insurance benefits on May 1, 2009,[2] alleging that he became disabled on December 1, 2008. (T. at 205.) The application was denied on June 19, 2009. (T. at 125.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 133.) The hearing was held on June 1, 2010. (T. at 34.) On July 28, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 104-14.)

Plaintiff returned to work in August 2011. (T. at 19.)

On December 8, 2011, the Appeals Council remanded the case to the ALJ to give further

---

[1]      The Administrative Transcript is found at Dkt. No. 8. Page numbers in citations to the Administrative Transcript refer to the Bates stamped page numbers on the bottom right of the original document rather than to the page numbers assigned by the Court's electronic filing system.

[2]      The ALJ's decision states that the application was protectively filed on April 13, 2009. (T. at 17.)

consideration to Plaintiff's maximum residual functional capacity ("RFC"), adhere to standards regarding conclusions reached about Plaintiff's past relevant work, and, if warranted, obtain evidence from a vocational expert.  (T. at 119-21.)

The ALJ conducted a second hearing on September 20, 2012.  (T. at 72.)  At that hearing, Plaintiff's attorney requested that the ALJ consider whether Plaintiff was disabled from December 1, 2008, to a date nine months after he returned to work.  (T. at 17.)

On October 25, 2012, the ALJ issued another decision finding that Plaintiff was not disabled.  (T. at 14-27.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 12, 2014.  (T. at 5.) Plaintiff received a thirty-day extension of time in which to file a civil action.  (T. at 1.)  Plaintiff commenced this action on May 7, 2014.  (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.) "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255,

258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence

scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial

---

[3]       On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442  (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

Here, the ALJ found that (1) there was a twelve-month period during which Plaintiff did not engage in substantial gainful activity; (2) Plaintiff suffers from the severe impairments of borderline intellectual functioning and a history of hypersomnia; (3) Plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment; (4) Plaintiff has the RFC to perform a full range of work at all exertional levels, but should avoid concentrated exposures to machinery, heights, driving a motor vehicle, and other hazardous activities; (5) Plaintiff is unable to perform any past relevant work; (6) jobs exist in significant numbers in the national economy that Plaintiff can perform; and (7) Plaintiff is not disabled. (T. at 19-27.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by: (1) failing to find Plaintiff disabled under Listing 12.05(C); (2) reaching an RFC determination unsupported by substantial evidence; (3) failing to properly assess Plaintiff's credibility; and (4) failing to properly account for Plaintiff's nonexertional limitations by consulting a vocational expert. (Dkt. No. 10.)

Defendant contends that the ALJ's decision applied the correct legal standards, is

supported by substantial evidence, and thus should be affirmed.  (Dkt. No. 13.)

## V.    DISCUSSION

Plaintiff argues that the ALJ erred at Steps Three, Four and Five of the five-step process.
(Dkt. No. 10.)  Defendant argues that the ALJ's decision applied the correct legal standards, is
supported by substantial evidence, and thus should be affirmed.  (Dkt. No. 13.)  For the reasons
discussed below, Defendant is correct.

### A.    Step Three: Listing 12.05(C)

Plaintiff argues that the ALJ erred by failing to find him disabled under Listing 12.05(C).
(Dkt. No. 10 at 3, 12-16.[4])  Defendant argues that the ALJ's decision is supported by substantial
evidence.  (Dkt. No. 13 at 6-9.)   For the reasons discussed below, I find that the ALJ's Step
Three determination is supported by substantial evidence.

Impairments listed in Appendix I of the regulations are "acknowledged by the
[Commissioner] to be of sufficient severity to preclude" substantial gainful activity; therefore, a
claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to
benefits."  *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995).  Listing 12.05 deals with
intellectual disability.  Under Listing 12.05(C):

> Intellectual disability refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning
> manifested during the developmental period; *i.e.*, the evidence
> demonstrates or supports onset of the impairment before age 22 [plus]
> [a] valid verbal, performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing an additional and
> significant work-related limitation of function.

---

[4]    Citations to page numbers in the parties' memoranda of law refer to the page
numbers assigned by the Court's electronic filing system.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05. Thus, to meet Listing 12.05(C), a plaintiff must show both subaverage general intellectual functioning indicated by an IQ score of sixty through seventy that manifested before age twenty-two *and* deficits in adaptive functioning that manifested before age twenty-two *and* another impairment imposing an additional and significant limitation. *See Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012); *Lyons v. Colvin*, No. 7:13-CV-0614, 2014 U.S. Dist. LEXIS 137002, at *20, 2014 WL 4826789, at *6 (N.D.N.Y. Sept. 29, 2014) (McAvoy, J.) (quoting *Decarlo v. Astrue*, No. 8:06-CV-488 (LEK/VEB), 2009 U.S. Dist. LEXIS 75236, at *10, 2009 WL 1707482, at *4 (N.D.N.Y. May 28, 2009[5])).

Here, the issue is whether Plaintiff suffers deficits in adaptive functioning.[6] "Adaptive functioning refers to an individual's 'ability to cope with the challenges of ordinary everyday life.'" *Talavera*, 697 F.3d at 153 (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)) (punctuation omitted). The term "refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include educational and social achievements." *Lyons*, 2014 WL 48226789, at *10 (quoting POMS DI 24515.056D2). When considering adaptive

---

[5]     Westlaw and Lexis list different dates for this decision. The Court has used the date listed by Lexis, which is the date of the report-recommendation containing the relevant language.

[6]     Plaintiff argues, cursorily, that the ALJ "improperly dismissed Plaintiff's valid IQ scores" and that, during the closed period, Plaintiff suffered from another physical impairment that imposed additional and significant work-related limitations on his functioning. (Dkt. No. 10 at 12-13.) The ALJ's decision at Step Three rested entirely on the adaptive functioning requirement of Listing 12.05(C). (T. at 23.) Defendant does not dispute that Plaintiff's IQ is in the required range, or that Plaintiff's hypersomnia imposed additional and significant work-related limitations on his functioning. (Dkt. No. 13 at 6-9.) Thus, the Court has addressed only the arguments about adaptive functioning.

functioning, the relevant difficulties are those arising from the plaintiff's cognitive limitations rather than those arising from other ailments. *See Talavera*, 697 F.3d at 154 ("[W]hile the record indicates that Talavera suffers from some limitations in her ability to take care of her children and effectively manage a household, . . . these problems arise from her physical ailments, not her cognitive limitations.").

Regarding adaptive functioning, the ALJ found that:

> The record does not establish that the claimant is significantly limited. . . . As noted in the original decision, the claimant has demonstrated adequate functional and daily living skills. He stated that he is able to attend to his personal needs, clean, do laundry, and engage in childcare. As noted above, the claimant testified that he returned to working at levels indicative of substantial gainful activity, and the record shows that he previously engaged in several years of work at levels of substantial gainful activity without any indication that his employment ended due to cognitive deficits. In fact, at the original hearing, the claimant denied that his employment ended due to cognitive limitations. At the current hearing, the claimant testified that while he has problems with reading, writing, and simple math, he achieved a regular, rather than a special education diploma. He also testified that he has a driver's license, works daily, and drives to and from Rochester twice every other weekend to get his children for visitation. Given the claimant's ability to return to substantial work activity and his broad range of daily activities, the record is clear that his cognitive disorder does not result in deficits in adaptive functioning.

(T. at 23, citation omitted.)

The evidence in the record shows that Plaintiff, who lives with his mother, helps around the house by doing dishes, a little bit of yard work, and a little bit of snow removal. (T. at 40, 64, 76.) Plaintiff seeks his mother's assistance in paying bills, but testified that "I pretty much do that myself, but with help." (T. at 66, 95-96.)

Plaintiff has a driver's license. (T. at 41.) At the first hearing, he testified that he only

drives for short distances alone.  *Id.*  This was due to his hypersomnia, which caused him to fall

asleep suddenly.  (T. at 61-62, 64.)  By the time of the second hearing, Plaintiff had received a

CPAP machine and, even before receiving the machine, began to be careful about getting rest

before driving.  (T. at 86-87, 89-90.)  With his sleep normalized, Plaintiff testified that he could

drive to Rochester, an hour from where Plaintiff lives, every other weekend to pick his children

up, drive them to his house, spend the weekend with them, and return them to Rochester.  (T. at

77-78, 86.)

Plaintiff testified that he has trouble with reading and spelling.  (T. at 43.)  Plaintiff

testified that he can "read a little bit, like small words."  (T. at 44.)  Plaintiff has someone read

anything important to him.  *Id.*  For example, someone read him the test when he applied for his

driver's license.  *Id.*  When he applies for jobs, he has someone help him fill out the job

applications.  (T. at 45, 52-53.)  He has never held a job where he had to follow written

instructions.  (T. at 45.)  Despite these difficulties, Plaintiff testified that he has never lost a job

because of his inability to read and write well.  (T. at 45.)  Rather, he lost jobs because of his

sleep problems (T. at 65) and legal troubles (T. at 83-84).

Based on the above, the ALJ's decision at Step Three is supported by substantial

evidence.  Although Plaintiff does not live on his own and has difficulty navigating some simple

tasks, there is substantial evidence that he is able to cope with the challenges of ordinary

everyday life.  *See Gorman v. Colvin*, No. 5:14-CV-0103 (TJM/CFH), 2015 U.S. Dist. LEXIS

37304, at *8-9, 2015 WL 1383823, at *3 (N.D.N.Y. Mar. 25, 2015) (ALJ's determination that

claimant did not suffer from deficits in adaptive functioning supported by substantial evidence

where the plaintiff managed her personal and daily living needs independently, prepared meals,

did chores including cleaning and organizing the house, cared for her three young children, managed money, counted change, shopped when she was accompanied, took public transportation if there were not a lot of people on the bus, attended appointments regularly despite having transportation issues, was working on earning her driver's permit, and admitted that she wanted to get her GED); *Lyons*, 2014 WL 4826789, at *4, 9-10 (ALJ's determination that plaintiff did not suffer from deficits in adaptive functioning not supported by substantial evidence where plaintiff graduated with an IEP diploma, had job coaches at all jobs except one that he lost after two weeks, had difficulty remembering what he was doing in high school, could not keep up required pace in high school and two jobs, was unable to read or comprehend, was only able to count change if given a lot of time, could not write checks, and could not concentrate for more than a few minutes).  Therefore, remand is not warranted on this ground.

### B.    Step Four: The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it "failed to . . . include limitations opined by Dr. Rauh-Ivers."  (Dkt. No. 10 at 16.)  Defendant argues that the ALJ's determination is supported by substantial evidence.  (Dkt. No. 13 at 9-12.)  For the reasons discussed below, remand is not warranted on this ground.

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012).  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546(c) (2014). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments, even those not deemed severe. 20 C.F.R. § 404.1545(a) (2014). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 404.1569a(b) (2014).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Dr. Rauh-Ivers examined Plaintiff in conjunction with litigation surrounding custody of his children. (T. at 510-18.) I will quote her opinion at length. She found that Plaintiff:

> presents with intellectual limitations that lay largely in the Mildly Mentally Retarded range of functioning and speak to notable difficulties with comprehending and meaningfully attending to the

world around him. He demonstrates notable learning difficulties, especially in the areas of reading and spelling and evidences significant problems with attention, sustaining concentration and learning in a quick and efficient manner. He presents as being anxiously aware of both his speech impediments as well as his learning issues and limitations and seems aware of his need for assistance in these areas. It is likely that [Plaintiff] demonstrates clear literacy issues, may have considerable difficulties with abstract reasoning, with making causal connections among details and with comprehending much of what he may hear or read. He also demonstrates clear limitations in his reading and spelling skills and demonstrates only a low base of fundamental arithmetic knowledge at his disposal. It is likely that he may have notable difficulties offering practical assistance to children regarding homework needs and that he may also demonstrate clear difficulties independently grasping the range of developing complexities in the needs of children as they grow.

[Plaintiff] demonstrates a limited array of emotional skills and coping strategies; a likelihood of understanding the world and his role in it in a simple and practical manner; and tends to be a quite passive and dependent man who may likely be compliant with tasks and details as they are presented to him . . . .

[Plaintiff] demonstrates an ability to become engaged in interventions or actions of supervision, especially if the needs and goals are provided to him in a clear and practical manner; however, his ability to generalize across situations, to engage in self introspective abilities, and to exercise sufficient judgment is limited. His prognosis for change is limited to poor . . . .

It is recommended that [Plaintiff] be viewed as a person with Mild Mental Retardation and that he be encouraged to pursue areas of support and assistance that may be available to him given his classification. He demonstrates clear learning needs and difficulties, is largely illiterate and could benefit from assistance to help him deal with serious or complex matters involving reading and comprehension. He may require assistance in terms of providing him with clear, practical and repetitive explanations or certain materials, details and elements.

[Plaintiff] is presently unemployed and potentially seeking disability. While this may be beneficial to him, it is nonetheless encouraged to

> him that he consider the possible benefits of some employment or
> active involvement with the community as a means of helping him
> address possible issues that could emerge for him regarding his sense
> of competency, productivity, loneliness and role.

(T. at 516-18.)  Dr. Rauh-Ivers' report did not include a functional assessment of Plaintiff's

work-related abilities.  (T. at 510-18.)  This is likely because it was prepared in conjunction with

custody determinations rather than in connection with Plaintiff's disability claim.

Consulting physician Kalyani Ganesh performed an internal medicine examination of

Plaintiff.  She noted "[n]o limitation to sitting, standing, walking, or the use of upper extremities.

The claimant should avoid activities such as driving, activities at heights, around machinery, and

other hazardous activities because of narcolepsy."  (T. at 492.)

Plaintiff's treating physician, Peer A. Soderberg, noted in a Medical Source Statement

that Plaintiff exhibited recurrent but infrequent daytime sleep attacks that could occur suddenly

and in hazardous conditions and could disrupt the work of coworkers or supervisors in his

vicinity.  (T. at 505.)  He opined that Plaintiff "rarely" experienced symptoms that could interfere

with the attention and concentration needed to perform simple work tasks during a typical

workday.  *Id.*  He opined that Plaintiff should "avoid concentrated or even moderate exposure" to

driving, heights, moving dangerous machinery, working alone without supervision, and power

tools.  *Id.* at 507.

The ALJ found that Plaintiff has to RFC to

> perform a full range of work at all exertional levels but should avoid
> concentrated exposure to machinery, heights, driving a motor vehicle,
> and other hazardous activities.  He also maintains the abilities (on a
> sustained basis) to understand, carry out, and remember simple
> instructions, respond appropriately to supervision, coworkers, and
> usual work situations, and deal with changes in a routine work

setting.

(T. at 23.)

The ALJ gave "great weight" to Dr. Soderberg's opinion "because he has provided treatment for the claimant's sleep disorder, and his opinion is consistent with the evidence in the record." (T. at 24.) The ALJ, however, did not "fully adopt[] Dr. Soderberg's determination that the claimant needs to avoid moderate exposure to environmental hazards given that the claimant continues to drive." *Id.* The ALJ gave "great weight" to Dr. Ganesh's opinion "based on her programmatic expertise." *Id.* The ALJ gave "some weight" to Dr. Rauh-Ivers' report "because it was based on an examination, and it supports the conclusion that claimant is capable of performing the demands of unskilled work despite his borderline intellectual functioning." *Id.* Specifically, the ALJ noted Dr. Rauh-Ivers' statement that "she encouraged him to consider employment." *Id.*

Plaintiff argues that the ALJ should have, based on Dr. Rauh-Ivers' report, determined an RFC that included a limited ability to focus attention and sustain concentration, a limited ability to learn quickly and effectively in a novel situation, a very poor capacity to read people, a limited array of emotional resources, limited literacy, considerable difficulty with abstract reasoning, considerable difficulty making causal connections among details, and a limited ability to generalize across situations and exercise judgment. (Dkt. No. 10 at 17-18.)

The ALJ's RFC determination was based on substantial evidence. The limitations he noted were supported by the reports of Dr. Ganesh and Dr. Soderberg, whose opinions were given explicitly in the context of Plaintiff's disability claim. The ALJ's decision to give only "some weight" to Dr. Rauh-Ivers' report was appropriate. That opinion was rendered for a

15

custody dispute rather than in connection with Plaintiff's disability claim.  Further, Dr Rauh-Ivers' opinion that Plaintiff should "consider the possible benefits of some employment or active involvement with the community" indicates that she did not believe that the limitations she noted rendered Plaintiff unable to work.  Therefore, remand is not warranted on this ground.

### C.     Steps Three and Four: Credibility

The ALJ found that Plaintiff's "subjective complaints are not fully credible."  (T. at 26.) Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's full scale IQ of sixty-nine and verbal IQ score of sixty-seven on an April 2010 IQ test because Plaintiff "attained these scores while in pursuit of disability benefits" (T. at 20); and (2) stating that Plaintiff "testif[ied] to debilitating narcolepsy" (T. at 25) when Plaintiff did not actually testify to that diagnosis.  (Dkt. No. 10 at 18-20.)  Defendant argues that the ALJ applied the correct legal standards and that his decision was supported by substantial evidence.  (Dkt. No. 13 at 12-14.)  Defendant is correct.

The Court reviews an ALJ's findings of fact under a substantial evidence standard.  "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted).  In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account.  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2012); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-7p, 1996 WL 374186 (July 2, 1996).  The ALJ is required to consider all of the evidence of record in making his credibility assessment.  *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

16

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to the consider extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence. *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others

make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3) (2012).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999 (citing *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588 (1984); *Ferraris v. Heckler*, 728 F.2d 582 (1984))). "A finding that a [claimant] is not credible

must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record. *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id.* at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

Here, despite Plaintiff's argument to the contrary, the ALJ did not reject the April 2010 IQ test results. As noted in Section V(A) above, the ALJ's determination that Plaintiff did not meet Listing 12.05(C) was premised entirely on a finding that Plaintiff did not suffer from deficits in adaptive functioning. In the course of the ALJ's discussion of the Listing, he stated that Plaintiff "has a valid verbal, performance, or full scale IQ that falls below 70" and

specifically cited the April 2010 IQ test administered by Dr. Rauh-Ivers. (T. at 23 (citing Exhibit 12F, which is Dr. Rauh-Ivers' evaluation.)) Thus, Plaintiff's argument regarding credibility and the ALJ's treatment of IQ scores is without merit.

Plaintiff next argues that

> the ALJ selectively characterized the evidence against the Plaintiff. Specifically, the ALJ found Plaintiff not credible in part because Plaintiff testified to having narcolepsy, when this diagnosis was ruled out in 2010. However, Plaintiff testified regarding his symptoms of excessive sleepiness, falling asleep at previous jobs, and notable improvement in these symptoms since he began using a CPAP machine. He did not testify to debilitating narcolepsy, and though his attorney mentioned this diagnosis at the hearing, the record shows that this was a previous potential diagnosis for which Plaintiff was treated.

(Dkt. No. 10 at 19, citations omitted.)

Contrary to this argument, the ALJ did not reject Plaintiff's credibility based on an erroneous finding that Plaintiff testified to having narcolepsy. Rather, the ALJ stated that Plaintiff's denial to Dr. Soderberg in February 2011 that he had experienced any "daytime somnolence or any symptoms of narcolepsy over the past six years . . . undermines his testimony that his symptoms only recently improved with the use of a CPAP machine." (T. at 25, citing T. at 522.) Despite this seeming rejection of Plaintiff's credibility regarding daytime somnolence, the ALJ gave "great weight" to Dr. Soderberg's opinion that Plaintiff exhibited recurrent but infrequent daytime sleep attacks and factored Plaintiff's daytime somnolence into his RFC determination by finding that Plaintiff should avoid concentrated exposures to machinery, heights, driving a motor vehicle, and other hazardous activities. (T. at 23-24.) The ALJ also credited Plaintiff's testimony about the range of daily activities in which he was engaged during

the relevant period, including driving, child care, household chores, paying bills with some assistance, and attending to his personal needs. (T. at 26, 64, 77-78, 88, 96.) In short, it appears that the ALJ largely found Plaintiff credible and that, to the extent he did not, that finding had no effect on his RFC determination. Accordingly, remand is not warranted on this ground.

### D.    Step Five: Use of the Grids

The ALJ relied on the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. pt. 404, subp. P, App'x 2, at Step Five to find that Plaintiff is capable of working rather than hearing testimony from a vocational expert. (T. at 26-27.) Plaintiff argues that the ALJ erred by failing to hear testimony from a vocational expert. (Dkt. No. 10 at 20.) Defendant argues that the ALJ properly applied the Grids. (Dkt. No. 13 at 14-15.)

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at Step Five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2012). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the Grids or consult a vocational expert. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular Grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996). However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational

expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

"Exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (finding the ALJ erred in applying the Grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments). "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Id.* (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). The existence of nonexertional limitations, however, does not automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert. *Zabala*, 595 F.3d at 410-11. Where the claimant's nonexertional limitations do not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible. *Id.*

Here, the ALJ determined that Plaintiff's only nonexertional limitation is that he should

avoid concentrated exposures to machinery, heights, driving a motor vehicle, and other

hazardous activities. (T. at 23.) The ALJ acknowledged that Plaintiff's "ability to perform work

at all exertional levels has been compromised by nonexertional limitations." (T. at 27.)

However, the ALJ stated that

> these limitations have little or no effect on the occupational base of
> unskilled work at all exertional levels [because Plaintiff] maintains
> the residual capacity to meet the basic mental demands of
> competitive, remunerative, unskilled work under SSR 85-15, i.e., the
> abilities (on a sustained basis) to understand, carry out, and remember
> simple instructions; respond appropriately to supervision, coworkers,
> and usual work situations; and deal with changes in a routine work
> setting.

*Id.*

The ALJ applied the correct legal standards and his decision is supported by substantial

evidence. District courts in this circuit have routinely affirmed ALJs who relied on the Grids

despite plaintiffs' need to avoid machinery, heights, and driving. *See Butler v. Colvin*, No. 14-

CV-2325 (SN), 2015 U.S. Dist. LEXIS 74284, at *58-61, 2015 WL 3606278, at *21 (S.D.N.Y.

June 8, 2015) (affirming ALJ's reliance on Grids where plaintiff's only nonexertional limitation

was a need to avoid unprotected heights, dangerous machinery, and access to narcotic

medications)*; Wilson v. Colvin*, No. 6:14-CV-0122 (MAD/TWD), 2015 U.S. Dist. LEXIS 64279,

at *9-10, 2015 WL 2371652, at *18 (N.D.N.Y. May 18, 2015) (affirming ALJ's reliance on

Grids where plaintiff's only nonexertional limitations were inabilities to work at heights, work

around moving machinery, or drive a car); *Peralta v. Colvin*, No. 5:14-CV-0068 (LEK/TWD),

2015 U.S. Dist. LEXIS 41016, at *21-23, 2015 WL 1505708, at *9-10 (N.D.N.Y. Mar. 12,

2015[7]) (affirming ALJ's reliance on Grids where plaintiff's only nonexertional limitation was a need to avoid heights and machinery); *Webb v. Astrue*, No. 3:11-CV-94 (GLS), 2012 U.S. Dist. LEXIS 21923, at *15-18, 2012 WL 589660, at *5-6 (N.D.N.Y. Feb. 22, 2012) (affirming ALJ's reliance on Grids where plaintiff's only nonexertional limitations were a need to avoid unusually high stress or dangerous work, a need to avoid more than occasional contact with other people, and a need to avoid heights and hazards); *Stephens v. Astrue*, No. 6:08-CV-0400 (GHL), 2009 U.S. Dist. LEXIS 54097, at *28-29, 2009 WL 1813258, at *9 (N.D.N.Y. June 25, 2009) (affirming ALJ's reliance on Grids where plaintiff's only nonexertional limitation was a need to avoid hazards and heights); *Gonzalez v. Astrue*, No. 06-cv-5403 (DLI), 2008 U.S. Dist. LEXIS 75722, at *23-26, 2008 WL 4453166, at *9 (E.D.N.Y. Sept. 30, 2008) (affirming ALJ's reliance on Grids where plaintiff's only nonexertional limitation was a need to avoid heights, machinery, and driving). Therefore, remand is not warranted on this ground.

**WHEREFORE,** it is hereby

**RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**, Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**, and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

---

[7]     Westlaw and Lexis list different dates for this decision. The Court has used the date listed by Lexis, which is the date of the report-recommendation containing the relevant language.

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: July 3, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge